**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 07 2013, 8:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. AUGER**
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**ELIZABETH A. GAMBOA**
Indiana Department of Child Services
Franklin, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF | ) | |
| THE PARENT-CHILD RELATIONSHIP OF: | ) | |
| C.A. & Z.A. (Minor Children), and H.A. (Father) | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 41A04-1205-JT-407 |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD | ) | |
| SERVICES, | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE JOHNSON CIRCUIT COURT
The Honorable K. Mark Loyd, Judge
Cause No. 41C01-1111-JT-36
Cause No. 41C01-1111-JT-37

**January 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

H.A. ("Father") appeals an order terminating his parental rights to C.A. and Z.A. (collectively, "the Children") upon the petition of the Johnson County Department of Child Services ("DCS"). We affirm.

**Issue**

Father presents a single issue for appeal: whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination of parental rights.

**Facts and Procedural History**

C.A. was born on March 30, 2001 and Z.A. was born on August 27, 2003. Father was their primary custodian after his divorce from M.A. ("Mother").

On October 31, 2008, Father attended a party with the Children and became highly intoxicated. Nevertheless, he drove away from the party with the Children in his vehicle. Father lacked a specific recollection of the events, but his vehicle was found crashed into the side of a house. C.A.'s arm was broken in the crash. Father was charged with Neglect of a Dependent and Criminal Recklessness. He was also subject to a no-contact order as to C.A.[1]

The Children were placed in the custody of Mother. However, on October 20, 2009, the Children were detained on an emergency basis, due to reports that Mother and her husband had physically abused the Children. Also, C.A. had attempted suicide by overdosing on sleeping pills. On November 23, 2009, Mother and Father admitted that the Children

---

[1] He was not prohibited from contact with Z.A.

2

were Children in Need of Services ("CHINS").

At the time of the CHINS dispositional hearing, Father was unable to take the Children because of his pending criminal charges and the no-contact order. However, he was ordered to maintain appropriate housing; provide proof of financial resources; participate in home-based services; submit to drug, alcohol, and parenting assessments; and resolve his criminal charges. The Children were placed in foster care after a brief placement with paternal relatives.

Father pled guilty to the charges against him and was sentenced to 1095 days incarceration, with 365 days suspended. He was ordered to serve 730 days in work release. He began serving his work release sentence in July of 2010.

The following month, Father was charged with two counts of Escape, each a Class C felony, for leaving work release without permission. He pled guilty to the charges and was sentenced to consecutive three-year terms of imprisonment.

On November 23, 2011, the DCS filed a petition for termination of Father's parental rights. By then, Mother had agreed to the termination of her parental rights. An evidentiary hearing was conducted on April 4, 2012. Father appeared at the hearing and testified that his projected release date was August 5, 2014. On April 23, 2012, the trial court issued its Findings of Fact, Conclusions of Law, and Order terminating Father's parental rights to the Children. He now appeals.

**Discussion and Decision**

3

## A. Standard of Review

Our standard of review is highly deferential in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

## B. Requirements for Involuntary Termination of Parental Rights

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code Section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) that one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was

4

made.

(iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id.

## C. Analysis

Father asserts that "the only evidence elicited at the trial demonstrated that the conditions which resulted in the children being removed had actually been remedied."

5

Appellant's Brief at 13. Father does not challenge the trial court's determination pursuant to Indiana Code Section 31-35-2-4(b)(2)(A) (removal from parent), (C) (best interests of the children) or (D) (satisfactory plan). He challenges the determination relating to Indiana Code Section 31-35-2-4(b)(2)(B) (reasonable probability conditions will not be remedied or relationship poses a threat to child's well-being).

Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. See L.S., 717 N.E.2d at 209. Because we find it to be dispositive under the facts of this case, we consider only whether DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. See Ind. Code § 31-35-2-4(b)(2)(B)(i). The relevant statute does not simply focus on the initial basis for removal for purpose of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." In re A.I., 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), trans. denied.

Initially, DCS intervened and removed the Children because of C.A.'s suicide attempt and physical abuse endured by the Children in Mother's home. Mother has since consented to the termination of her parental rights. However, physical abuse at the hands of Mother and stepfather is not the sole reason for removal and the continued placement of the Children in foster care.

When the Children were removed from Mother, Father was facing criminal charges

and was subject to a no-contact order as to C.A. Subsequently, he had contact with the Children while serving a work release sentence. Nonetheless, he decided to twice escape the confines of his work release placement. As a result, he was sentenced to consecutive three-year terms of imprisonment.

As of the evidentiary hearing conducted on April 4, 2012, Father was incarcerated and unemployed. Due to his incarceration, he was unable to provide a home for the Children or participate in home-based services. He testified that his anticipated release date was August 5, 2014.

DCS presented clear and convincing evidence from which the trial court could conclude that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home would not be remedied.

## Conclusion

DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

Affirmed.

VAIDIK, J., and BROWN, J., concur.